UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| BRYANT W. PLITT,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>FRESNO POLICE OFFICER R.<br>　GONZALEZ, et al.,<br><br>　　　　　　　Defendants. | Case No. 1:08-cv-01352-BLW-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

The Court has before it a Report and Recommendation filed by United States Magistrate Judge Larry M. Boyle. (Dkt. 40.) The United States Magistrate Judge recommends granting Defendants' Motion for Summary Judgment (Dkt. 23) based on the record presented. Plaintiff has filed an objection (Dkt. 42), which the Court now addresses.

## REVIEW OF REPORT AND RECOMMENDATIONS

### 1.　Request for Counsel

Plaintiff first argues that he is at a disadvantage because he does not understand the standard of law or the legal analysis used by the Court in this case. Judge Boyle denied Plaintiff's request for appointment of counsel. (Dkt. 41.)

**MEMORANDUM DECISION AND ORDER - 1**

After reviewing the record, the Court finds that Plaintiff has adequately articulated and provided appropriate documentary support for his claims. While appointing counsel may help Plaintiff understand why summary judgment is being granted, counsel would not be able to make substantially different or better arguments than Plaintiff has made, given the undisputed facts in the record. The Court also finds that Plaintiff's claims are not particularly complex nor do they appear to have merit.  Accordingly, Magistrate Judge Boyle did not err in declining to appoint counsel for Plaintiff.

**2.     Background**

Plaintiff seeks to have certain information in his arrest history and prison file corrected *and* removed. Defendant argues that Plaintiff's records have been corrected, but it is impossible to remove the information with which Plaintiff disagrees because the information is historical in nature. Plaintiff and Defendants rely on the same court and prison records filed by the parties in support of their arguments, and there is no dispute as to how the files have been "corrected" to date–Plaintiff's argument is that the corrections are inadequate.

**3.     Report and Recommendation**

Magistrate Judge Larry M. Boyle found and concluded that Plaintiff's Fourteenth Amendment due process claim was premature because Plaintiff will not be eligible for parole until May 2, 2028, and will not have a parole eligibility hearing until April 2027 (Defendants' Undisputed Facts & Exhibits, Dkt. 23-2 at 2, 12), and thus, Plaintiff cannot presently show that "the information in his central file about the 1985 arrest, even

**MEMORANDUM DECISION AND ORDER - 2**

assuming it is false, 'inevitably affects the duration of his sentence.'" (Report and Recommendation, Dkt. 40 at 11.) Construing the claim as a due process claim focusing on parole eligibility, the Court finds that (1) at worst, the claim must be denied because there is no evidence in the record that Plaintiff's parole eligibility has been adversely affected by the limited extent to which the arrest records have been corrected, and (2) at best, the claim is unripe until such future date Plaintiff can show that his parole eligibility actually has been adversely affected by the limited extent to which the arrest records have been corrected.

As Judge Boyle noted, since the time Plaintiff filed his Complaint, the law on due process claims in parole settings has changed. If Plaintiff's claim is construed as a parole eligibility claim, little can be accomplished in a civil rights action. If, in the future, Plaintiff disagrees with the outcome of his parole hearing based on the "incorrect arrest record" argument, then his remedy would be in habeas corpus (after complete and proper state court exhaustion) and it would be limited to the inquiry of whether he was afforded "an opportunity to be heard and was provided a statement of the reasons why parole was denied." *See Swarthout v Cooke*, 131 S.Ct. 859, 862 (2011).

The only type of parole claim that can be brought in a civil rights action is a claim seeking invalidation of "state procedures used to deny parole eligibility . . . and parole suitability," and not a claim for "an injunction ordering [an] immediate or speedier release into the community." Wilkinson v. Dotson, 544 U.S. 74, 82 (2005). At most, in a civil rights action an inmate can seek as a remedy "consideration of a new parole

**MEMORANDUM DECISION AND ORDER - 3**

application" or "a new parole hearing," which may or may not result in an actual grant of parole.  Id.

In addition, to the extent that Plaintiff's claim can be construed under a different civil rights theory such as defamation or cruel and unusual punishment, the claim fails on the merits because Plaintiff's prison records are substantially accurate and Plaintiff has shown no causal connection between these Defendants and his injuries, as the Court will now explain.

On May 3, 1985, Plaintiff was arrested by the Fresno Police Department and charged with one count of "P.C. 672.2, necessity of registration by outsider on school grounds," and one count of "P.C. 626.8, disruptive presence at school by known sex offender."[1] (Dkt. 30 at 47.) However, on June 11, 1985, the District Attorney filed charges against Plaintiff for violation of Penal Code § 647A, alleging that "defendant, on or about May 3, 1985, did willfully and unlawfully annoy and molest a child under the age of eighteen years." (Dkt. 30 at 48, 106.)[2]

Plaintiff did not appear for the originally-scheduled hearing on June 14, 1985.

---

[1] Subsequent to Plaintiff's arrest, Penal Code § 626.8 was amended to delete all references to sex offenders. (Dkt. 23-1 at 1, note 1.) At the time of Plaintiff's arrest, that section prohibited any person from coming on to school grounds without lawful business, or whose acts created a disturbance, or if the individual was a sex offender. (Defendant's Undisputed Facts & Exhibits, Dkt. 23-2 at 2, 5-8.)

[2] The records for that criminal action are found under the name Bryant William Plett, not Plitt. (Dkt. 30 at 48.) Therefore, when Plaintiff inquired about whether he had ever been charged with a violation of Penal Code § 647A, the Superior Court of California for the County of Fresno found no record. (Dkt. 30 at 40.) This does not create a genuine dispute of material fact, because court records for Plaintiff under "Bryant William Plett" correspond to the charges at issue. (Dkt. 30 at 48.)

MEMORANDUM DECISION AND ORDER - 4

(Dkt. 30 at 48.) Plaintiff appeared for a hearing on the charges three months later, on September 25, 1985. (Dkt. 30 at 48, 106.) The record indicated there was probable cause for arrest based on his failure to register at the high school and disruptive entry upon school grounds. (*Id*. at 58, 106.) The court found Plaintiff to be "factually innocent" of the § 647A charge, a motion to dismiss was filed, and the case was dismissed. (*Id*.)

When Plaintiff was incarcerated on a subsequent unrelated conviction (for which he is still imprisoned), Pleasant Valley State Prison (PVSP) erroneously noted in Plaintiff's prison file that he was ***arrested*** on a PC ***477A*** Annoy/Molest Children charge. The errors were that he originally was arrested on other charges, but several days later charged with an Annoy/Molest Children charge, and that the correct Penal Code section was 647A (Annoy/Molest Children), not 477A (477A does not exist; § 477 criminalizes counterfeiting (Defendants' Undisputed Facts, Dkt. 23-2 at 2, note 1.)).

On April 15, 1997, a Unit Classification Committee (UCC) at PVSP reviewed Plaintiff's status and records, and it was noted that the 1985 Annoy/Molest Children charge had been dismissed by the court. The UCC determined that Plaintiff should ***not*** receive an R suffix, which was a code that would mark him as a sex offender subject to registration pursuant to Cal. Code Regis. title 15, § 3377.1(b). (*See* Dkt. 23-2 at 20.)

On August 21, 2003, an archive file review was performed at the prison, where it was noted: "9-25-85 arr[est] by CASO Fresno PC 647(A) Annoy/Molest Children - dis[missed] - no R suffix per UCC of 4-15-97." (Dkt. 23-2 at 14.)

On September 29, 2003, the following note was included on Plaintiff's Initial GP

**MEMORANDUM DECISION AND ORDER - 5**

Review form:

> Arrested 9/25/1985 by CASO Fresno for PC *477*(A), Annoy/Molest Children. The dispo was dismissed. UCC of 4/15/1997 elected not to affix 'R' suffix, per archive review of 8/21/2003.

(Dkt. 23-2 at 15.)

Again, as of September 2003, the errors in the prison record were (1) that Plaintiff had been arrested on other charges, but ***subsequently charged*** with Annoy/Molest Children; (2) that the proper Penal Code section for "Annoy/Molest Children" was ***647A***, not 477A.

The reference to 477A was corrected by issuance of a corrected "Classification Chrono" CDC 128G form, with a handwritten overstrike indicating "647A," as a result of a partial granting of Plaintiff's grievance appeal on June 6, 2004. (Dkt. 23-2 at 20; Dkt. 30 at 16-17; Plaintiff's Affidavit, Dkt. 31 at 8.)

On April 27, 2005, Plaintiff had another UCC review and it was noted:

> The Committee notes the CLETS report indicates an arrest on 9/25/1985 for PC 647(A), Annoy/Molest Children, with a court disposition of the same date being dismissed. Fresno Police Department arrest report and Fresno County Superior Court and jail information indicate the offense originally occurred on 5/8/1985, stating Plitt was loitering on a school campus, specifically Fresno High School, and later lied about being on campus. The report is very limited and does not indicate any sexual activity. Court documents indicate he was officially charged on 6/11/1985 for PC 647(A) and the case was dismissed in court on 9/25/1985. The Committee further notes CDC-128G dated 9/29/2003 and archive review CDC-128B dated 8/21/2003, indicating UCC of 4/15/1997 elected not to affix an 'R' suffix. The committee concurs with prior UCC actions, noting the arrest and the circumstances do not warrant an 'R' suffix.

(Dkt. 23-2 at 21.)

**MEMORANDUM DECISION AND ORDER - 6**

Case 1:08-cv-01352-BLW-LMB   Document 44   Filed 09/30/11   Page 7 of 15

Also during the April 27, 2005 review, the UCC noted that Plaintiff had refused a bed move from Facility B-5 to B-1 because he believed if he were moved he would be pressured for information about the reported 1985 arrest, that he feared for his safety, and that he was instead transferred to Facility C. Plaintiff was not disciplined for refusing the bed move and his custody was changed from Close A to Close B. (Defendants' Exhibits, Dkt. 23-2 at 21.) The UCC permitted Plaintiff to pursue the vocational course he desired, and the UCC record reflects that "Inmate Plitt actively participated in UCC and was in agreement with this Committee's Decision." (*Id*.) However, Plaintiff remained dissatisfied that references to the charge for which he was exonerated was not *removed* from his prison records.

Plaintiff litigated the claims of inaccuracy by filing a petition for writ of habeas corpus  in the Superior Court of California. On April 14, 2005, Judge John Gallagher denied the petition, explaining to Plaintiff that it is not possible to rewrite history and show that Plaintiff was *not* charged with 647A Annoy/Molest Children, because he, in fact, was so charged, even though he was arrested under two different penal code sections. It is a distinction without a difference for Plaintiff to argue that he was not *originally* arrested under that Penal Code section, but was, in the course of the same proceedings, *officially charged* with that Penal Code section. In either event, Plaintiff was, in fact, charged with Penal Code § 647A, Annoy/Molest Children (albeit under the name of "Bryant William Plett"). (Dkt. 30 at 48.)

Importantly, both California Superior Court records and prison records show that

**MEMORANDUM DECISION AND ORDER - 7**

the charges were dismissed, and that Plaintiff was found "factually innocent" of the

charges. Judge Gallagher went on to clarify in his order that "[s]uch exoneration means

that 'the arrest' shall be deemed not to have occurred, and may not be used as evidence in

any action (see section 851.8, subdivisions (f) and (i))." (Dkt. 30 at 106 (internal

punctuation modified)).

The first correction that could be made to the prison record is to substitute the

word "charged" for "arrested," but that change does not remove the "Annoy/Molest

Children" title of which Plaintiff complains. The Court is in agreement with the

California Superior Court that the record is substantially accurate, and no further

"correction" need be made. Because the charges (albeit without factual basis) were

brought, they cannot be "unbrought." Rather, Plaintiff has been exonerated, and that has

been noted in both court and prison records.

The second mistaken reference in the prison record–that the Penal Code section

corresponding to "Annoy/Molest Children" was 477 (counterfeiting) rather than 647A

(annoy/molest children)– is of no consequence whatsoever. That record was corrected by

a handwritten overstrike in 2004. In any event, Plaintiff does not argue that attributing a

counterfeiting claim to him has caused any negative consequence whatsoever.

Even though Plaintiff would like the 1985 Annoy/Molest Children charge to be

removed, it is, unfortunately, a part of his history; but, at the same time, the exoneration

is also a part of his history–meaning that the *complete* record reflects he is innocent of the

annoy/molest children charge. When these records are read together, as they must be, the

**MEMORANDUM DECISION AND ORDER - 8**

exoneration wipes clean (in a legal sense) Plaintiff's record regarding alleged sex offenses.

The record reflects that, to date, Plaintiff has been given notice of the contents of his prison file, has had sufficient opportunity to object to the contents, had corrections made as a result of his objections, and has been given adequate notice of the results of each Classification Committee review. Accordingly, there is no genuine dispute of material fact as to whether (1) Plaintiff has been deprived of due process to date, (2) Plaintiff has been defamed by the prison, and (3) the court and prison records have not been substantially corrected. Accordingly, Defendants are entitled to summary judgment on Plaintiff's current claim that retention of this information in his court and prison file is unconstitutional.

Further, the Court concludes that Plaintiff's claim specifically fails under an Eighth Amendment theory, to the extent that Plaintiff asserts these Defendants are liable for any risk of harm or actual harm occurring within the time frame of one year[3] prior to the filing of his Complaint through the January 25, 2011 incident.[4]

To prevail on an Eighth Amendment "prison conditions" claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a

---

[3] *See Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir.1994) (one year statute of limitations for civil rights actions based on California's statute of limitations for personal injury claims; Cal. Civ. Proc. Code § 340(3).

[4] While Plaintiff elected not to file an amended complaint to set forth the facts supporting this claim, as ordered, he continues to pursue the claim in his briefing. Therefore, the Court will consider it on the facts asserted in his briefing in the facts included in the record. *See* Fed. R. Civ. P. 56(e).

**MEMORANDUM DECISION AND ORDER - 9**

substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials must "take reasonable measures" to ensure the safety of inmates. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

When a prison official is deliberately indifferent to a substantial risk of serious harm, his conduct violates the Eighth Amendment. *Id.* at 828. Deliberate indifference exists when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. Id. at 838.

Plaintiff's Affidavit details instances from 2003 and 2005 where other PVSP inmates asked to see his paperwork; the purpose of the other inmates' inquiries was to determine whether Plaintiff had a history of sex crimes. (Dkt. 31.) Plaintiff alleges that these inmates saw the notation on his prison record that he had been arrested for annoying or molesting children, and, after that date, he has been placed in jeopardy of being beaten by other inmates. These instances arising in 2003 and 2005 are obviously well beyond the one-year statute of limitations deadline, as Plaintiff's Complaint in this case was constructively filed on September 5, 2008. While Plaintiff can rely on these instances to show that he has been incarcerated under a substantial risk of serious harm from September 2006 to date, he fails to bring forward instances between 2003 and 2005 showing he was subjected to a substantial risk of serious harm as a result of his records. Rather, he states that the inmates demanding to see the records gave Plaintiff a reprieve while he pursued correction of the records. (Dkt. 31 at 5-9.)

Plaintiff offers the following chronology of events to support his Eighth

**MEMORANDUM DECISION AND ORDER - 10**

Amendment claim:

1. "[In] approximately March or April of 2006, . . . Plaintiff was approached by B-Facility staff and was given the order to move to B-Facility, 1 Block. . . . I proceeded to alert staff to the fact that I could not be moved to Building 1 due to the safety concerns and that I had already been established in Building 5. It was at this point that upon addressing B-Facility staff of the problem it was determined that Plaintiff should be moved to C-Facility General Population Yard." (Dkt. 31 at 10.)

2. Plaintiff was moved to C-Facility. (*Id.*) Plaintiff alleges that "at the time of his bed move [he] was given an ultimatum of either moving to B-1 or C-facility, which caused Plaintiff's abrupt move thus targeting Plaintiff." (Dkt. 31 at 2.)

3. "It is well known that any inmates moved from B-Facility to C-Facility could not return to B-Facility without fear of retaliation by B-Facility inmates." (Dkt. 31 at 10.)

4. "During the years Plaintiff was on C-Facility, other inmates from B-Facility had come over to also be housed on C-Facility. That is when on the date of January 25, 2011, Plaintiff was assaulted by two inmates while []waiting for a diabetic shot to be administered while waiting in front of C-Facility Medical Clinic." (*Id.* at 11.)

5. "Upon arriving in Administrative Segregation Plaintiff observed from a stand up cage while awaiting a Classification Committee inmates Tippets, one of the inmates who had assaulted Plaintiff. I yelled at Inmate Tippets as to why I was assaulted, and the response was given that you had moved to C-facility due to dirty paperwork. At this particular time, I came to know nothing had been done in correcting these entries by Pleasant Valley State Prison staff and that I had finally been assaulted as an end result of moving from one yard to another." (*Id.*)

6. "Plaintiff has endlessly attempted to have these erroneous charges of Penal Code 647(A) of annoy/molest children corrected to no avail. Pleasant Valley administrative staff and warden continued to house Plaintiff on a General Population Facility while being aware of the potential danger to Plaintiff due to these erroneous entries." (Dkt. 31 at 11-12.)

During the relevant time period, Defendant Yates was the warden of Pleasant

**MEMORANDUM DECISION AND ORDER - 11**

Valley State Prison; Defendant Grannis was Chief of Inmate Appeals for the Department

of Corrections and Rehabilitation; and Defendant Gipson was a correctional counselor at

Pleasant Valley State Prison. (Answer, Dkt. 21.)

Based on the foregoing and other evidence in the record, the Court concludes that

Plaintiff has failed to bring forward enough evidence to proceed to trial on the issues of

(1) existence of a substantial risk of serious harm, (2) failure of the named Defendants to

take reasonable measures to ensure Plaintiff's safety; and (3) deliberate indifference of

the named Defendants to Plaintiff's safety.

Even though Plaintiff alleges that his "abrupt move" in 2006 targeted him for an

attack, the record reflects that the first serious incident of harm allegedly based on

Plaintiff's prison records was in 2011. In other words, during the time Plaintiff has

disputed his prison record designations, Plaintiff nevertheless was housed in a relatively

safe manner from 2004 to 2011, a period of 7 to 8 years. Accordingly, Plaintiff has not

shown the existence of a substantial risk of serious harm regarding the manner in which

his prison records were maintained or corrected.

Of course, an inmate does not have to wait to be assaulted in order to state an

Eighth Amendment claim. However, to state a claim worthy of a jury trial, the inmate

must bring forward facts showing that prison officials did not take reasonable steps to

ensure his safety. Here, when Plaintiff refused to move between B-block units, prison

staff heeded his concerns. They did not force him to move, nor did they discipline him for

the refusal. Plaintiff acknowledges that a move to C-block was preferred to a move

**MEMORANDUM DECISION AND ORDER - 12**

among B-block units. He was moved to C-block. Plaintiff acknowledges that a move from C-block back to B-block would have been detrimental to his safety. No Defendant attempted to move Plaintiff back to B-block once he had been moved to C-block.

Plaintiff does not bring forward facts to show that he or the named Defendants anticipated that other inmates who had been moved from B-block to C-block would attempt to harm Plaintiff, especially given the fact that Plaintiff had been moved from B-block in 2006, and had lived in C-block unharmed for 4 to 5 years.

Plaintiff has also failed to bring forward facts supporting the element of "deliberate indifference," which requires a showing that these particular Defendants were "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and that these Defendants actually drew such an inference. No specific facts exist in the record to show that (1) after prison officials selected C-block for Plaintiff that these Defendants were aware of specific facts from which they could draw an inference that a substantial risk of harm existed between 2006 and 2011; (2) these Defendants actually drew an inference of a substantial risk of harm; or (3) these Defendants ignored the risk. Rather, the history shows that prison officials reasonably acted to ensure Plaintiff's safety, and that the random act of violence by former B-block inmates in C-block (allegedly attributed to Plaintiff's "dirty paperwork") was unforeseen. After the assault, prison records note: "A review of your Central File revealed that you had no enemy concerns of Facility 'B.'" (Dkt. 30 at 108.) Plaintiff has not brought forward any facts showing that he himself perceived any particular threat of harm from other former B-

**MEMORANDUM DECISION AND ORDER - 13**

block inmates after Plaintiff had lived in C-block relatively harm-free for 4 to 5 years.

Prison officials took immediate steps after the assault to protect Plaintiff from further harm. Plaintiff was placed in administrative segregation. (Dkt. 30 at 108.) Plaintiff was moved from PVSP to Solono State Prison (SSP) on March 10, 2011. (Dkt. 31 at 17.) In his intake records, it was noted that his "safety may be in jeopardy if housed in general population at CSP-Solano." (Dkt. 30 at 111.)

Plaintiff has failed to bring forward "evidence on which the jury could reasonably find" for him on his Eighth Amendment claim arising from the failure to correct the records in the manner he desires. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, Defendants are entitled to summary judgment. Plaintiff's Eighth Amendment claims arising between 2004 and January 25, 2011 will be dismissed with prejudice.[5]

## ORDER

**IT IS ORDERED:**

1.   The Report and Recommendations of Judge Boyle (Dkt. 40) are ADOPTED as to the recommendation that summary judgment be entered in favor of Defendants.

2.   Defendants' Motion for Summary Judgment (Dkt. 23) is GRANTED.

---

[5] While the Court realizes that Plaintiff does not have control over other inmates' actions, Plaintiff is encouraged to discuss his options with prison security officials, including but not limited to: (1) protective custody; (2) reporting to security personnel the identity of other inmates who seek Plaintiff's records; (3) electing not to show his paperwork (with or without the corrections) to other inmates; or (4) keeping Plaintiff's paperwork in his central prison file rather than in his cell.

**MEMORANDUM DECISION AND ORDER - 14**

3.      Plaintiff's claims are DISMISSED with prejudice. The Judgment does not

        preclude Plaintiff from filing an appropriate habeas corpus or civil rights

        claim regarding use of his prison records after he becomes eligible for

        parole if he has a proper factual and legal basis for such a claim at that

        time.



DATED:  **September 29, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**